**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

CODY EUGENE DAVIS                               *

Plaintiff                                       *

v                                               *          Civil Action No. ELH-20-2690

PRIMECARE MEDICAL, INC., *et al*.               *

Defendants                                      *
                                             ***

**<u>MEMORANDUM OPINION</u>**

Cody Eugene Davis, the self-represented plaintiff, has filed suit pursuant to 42 U.S.C. § 1983 against defendants PrimeCare Medical, Inc. ("Prime Medical"), Kimberly Yeager, Sarah Duboraw, Misty Butler, and Megan Ryan-Riffle. He alleges that defendants acted with deliberate indifference to his serious medical needs by failing to provide blood pressure medication for him during three separate periods of his detention at the Washington County Detention Center ("WCDC"). ECF 1; ECF 7. Defendants have moved to dismiss or, in the alternative, for summary judgment. ECF 11; ECF 16. The motion is supported by a memorandum (ECF 11-1) (collectively, the "Motion") and plaintiff's medical records. ECF 11-2.[1] Davis was notified of his right to respond to the Motion. ECF 13. But he has not done so.

It appears that Davis is no longer confined at WCDC. Correspondence sent by the Court to Davis at WCDC was returned to the Court, marked return to sender and unable to forward. *See* ECF 17; ECF 18. One envelope bears the handwritten notation "Return to sender, not here." ECF 18. Davis has not provided his current address to the Court, as required by Local Rule. 102.1.b.iii.

---

[1] ECF 11 was filed under seal, in its entirety. But, I ordered defendants to file a redacted version. *See* ECF 14. The redacted filing is at ECF 15.

(D. Md. 2018).

However, on March 1, 2021, Davis filed a separate suit in the case of *Davis v. Moore*, Civil Action No. PJM-21-521 (D. Md). He provided the address of 3820 Grosh Drive, Greencastle, PA 17225. Significantly, staff notes in this case, entered March 1, 2021, reflect that ECF 13 and ECF 17 were resent to plaintiff on that date, as directed.[2] The mail was not returned. Nevertheless, plaintiff still did not respond to the Motion in this case.

The Motion is ripe for review, and no hearing is needed. *See* Local Rule 105.6. For the reasons discussed below, I will grant the Motion.

## I.    Background

Davis was detained at WCDC on three separate occasions between June 2019 and September 2020. He filed this suit on September 17, 2020, alleging that since June 13, 2019, he was not provided with blood pressure medication while detained at WCDC, which caused him to suffer headaches and other issues. ECF 1 at 2-3.

Davis initially sued only Prime Medical. ECF 1. On September 29, 2020, he supplemented the Complaint to add Yeager, Duboraw, Butler, and Ryan-Riffle[3] as defendants. ECF 4. They are medical providers employed by Prime Medical. Davis asserted that although his primary care doctor had diagnosed him with high blood pressure, defendants disputed that he had high blood pressure and denied him his medication. *Id.* And, on October 23, 2020, Davis again supplemented the Complaint. ECF 7. He stated that while at WCDC he was not continued on Metoprolol,[4] as

---

[2] The Staff Attorney instructed the Clerk to resend ECF 13 and ECF 17. Davis is reminded that failure to maintain a current address on file with the Court while a case is pending may result in dismissal of the case, without prejudice.

[3] Davis named "the head of nursing Megan." ECF 4. She has been identified by defendants as Megan Ryan-Riffle. ECF 11.

[4] Metoprolol is used alone or in combination with other medications to treat high blood

2

he had been when he was on the "outside of the detention center . . . ." *Id.* He described a variety of symptoms that followed.

In particular, Davis alleges that he was provided inadequate medical care by defendants between June 13, 2019-September 3, 2019; December 27, 2019-May 14, 2020; and July 22, 2020, to the date of filing this Complaint. ECF 4. ECF Davis was not confined at WCDC between September 4, 2019-December 26, 2019 and May 14, 2020-July 22, 2020. ECF 16 at 2, n. 1; ECF 5 at 1. He seeks damages of $500,000. ECF 1 at 4.

When Davis entered WCDC in June 2019, his blood pressure was somewhat elevated at 128/84 [5] and he was placed on daily blood pressure checks for five days. ECF 11-2 at 13, 22. He was also noted as a possible referral for a psychiatric evaluation. *Id.* at 14.

Davis's blood pressure was checked on June 14, June 15, June 16, and twice on June 17, 2019. It measured 132/84, 128/84, 130/80, 148/94, 128/80, respectively. *Id.* at 22, 73. Medical notes dated June 17, 2019, indicate that Davis's blood pressure was "very" elevated, and he should continue to be monitored. *Id.* at 13, 72-73 (medical history checked box for hypertension, noting that Davis complained of a headache, left arm and shoulder pain, and stated "I'm having a stroke."). Davis was instructed to return for medical assessment if his symptoms recurred. *Id.* at 75.

---

pressure. *See* https://medlineplus.gov/druginfo/meds (visited April 2, 2021).

[5] Blood pressure is measured using two numbers: The first number, systolic blood pressure, measures pressure in the arteries when the heart beats. The second number, diastolic blood pressure, measures pressure in the arteries when the heart rests between beats. A normal blood pressure is less than 120/80. American College of Cardiology/American Heart Association Guidelines (2017) list elevated (at risk or prehypertension) blood pressure as showing a systolic pressure between 120-129 and a diastolic pressure of less than 80. High blood pressure or hypertension is shown by a systolic blood pressure of 130 or higher and a diastolic pressure of 80 or higher. *See* https://www.cdc.gov/bloodpressure/about.

On June 26, 2019, Davis's blood pressure was 131/80.  *Id*. at 22.  His blood pressure was 140/80 on July 7, 2019.  *Id*.

On July 23, 2019, Davis was seen for complaints of headaches and a rash.  But, no rash was observed during the medical visit.  *Id*. 44, 66-67.  His blood pressure measured 146/89.  *Id*. at 22.  Davis was placed on weekly blood pressure checks due to his headaches and elevated blood pressure.  *Id*. at 44.  He was told to use ibuprofen for pain relief.  *Id*. at 65.

Davis's blood pressure measured 144/80 on July 30, 2019.  *Id*. at 21.  His blood pressure measured 131/98 on August 10, 2019.  *Id*.

On August 23, 2019, Davis was examined for a report of musculoskeletal pain, and his blood pressure measured 132/87.  He was provided with ibuprofen.  *Id*. at 21, 64-65.  Davis's blood pressure measured 130/87 on August 27, 2019.  *Id*. at 21.

Davis was released from WCDC on September 3, 2019.  It was recommended that he follow up with a mental health provider.  *Id*. at 39-40.

Plaintiff was again confined at WCDC in December 2019.  At his intake screening on December 28, 2019, he did not report suffering any chronic conditions and the only medication he was on was psychotropic.  *Id*. at 25-32.  His blood pressure was 128/70.  *Id*. at 21, 23.  On December 30, 2019, plaintiff's blood pressure was 153/91.  *Id*. at 21.

Davis's blood pressure measured 144/92 on January 6, 2020.  *Id*. at 15, 21, 33.  On January 20, 2020, Davis was seen for complaints of headache when sitting up in bed.  His blood pressure was 119/81.  It was noted that his headache could be a possible reaction to a newly prescribed psychological medication.  *Id*. 62-63.

On January 25, 2020, Davis was seen again for headaches.  He said that Motrin helped and he could not tell what made his pain worse.  Davis denied having any symptoms other than

headaches.  His blood pressure was 124/74.  *Id*. at 60-61.  The next day, January 26, 2020, Davis was seen again for headaches.  His blood pressure was 132/78.  *Id*. 58-59

On April 13, 2020, Davis was seen for an unrelated complaint.  His blood pressure measured 115/70.  *Id*. at 17.

Then, on April 29, 2020, Davis was seen for complaints of headaches.  *Id*. at 45-46, 56-57. His blood pressure was 124/77.  *Id.* at 20.  The medical report from that visit indicates plaintiff reported to Sarah Duboraw, LPN: "[I] think it's my high blood pressure. I'm not getting my medication for it."  *Id*. at 56.  Davis also reported using Metoprolol when he was not in custody. *Id.*  Davis was given acetaminophen for his headaches, which he attributed to getting "jumped" in February 2019.  *Id.* at 56-57.  He also said he had "been dealing with this for a while."  *Id.* at 56.

Defendants point out that at the medical visit on April 29, 2020, it was the first time Davis mentioned a previous diagnosis of hypertension, or that he had been taking blood pressure medication prior to incarceration.  ECF 11-1 at 4.  Previously, he had denied HTN (hypertension) or taking HTN medications.  *Id.*

On May 6, 2020, Davis's blood pressure measured 130/90.  ECF 11-2 at 16-17.  The record again notes that plaintiff had reported an HTN diagnosis with Metoprolol "on the outside."  *Id.* at 17.  Davis also reported that he was to be released that day.  *Id*.  Davis was advised that medication was not indicated at that time for his blood pressure, and he should follow-up with his physician after release.  *Id*.

Davis was released on May 14, 2020.  *Id*. at 41–42.  His records from that date show that it was recommended he should follow up as to his mental health.  *Id*.

Davis returned to the WCDC on July 22, 2020.  His blood pressure at intake was 144/95.

*Id*. at 1.  The medical screening report indicates Davis denied any need for immediate medical attention for pain or illness.  *Id.* at 3.  He did not report having high blood pressure.  *Id.* at 5.  The only medication he reported taking was 300 mg of lithium.  *Id*. at 5.[6]  He reported that he may be borderline diabetic, suffers headaches several times a week, and has a family history of heart disease, high blood pressure, and diabetes.  *Id*. at 5, 6-7, 9.

On July 31, 2020, Davis was examined for right side pain.  *Id*. at 54–55.  His blood pressure was 120/68.  *Id*.  He was given ibuprofen for his pain.  *Id*.

Davis complained of chest pain on August 3, 2020.  His blood pressure was 147/86.  His family history for heart, hypertension, and diabetes was noted.  *Id*. at 11-12, 16, 19.  A few days later, on August 9, 2020, Davis was again examined for chest pain.  *Id*. at 52–53.  His blood pressure was 129/83.  *Id*.  And, Davis was evaluated on September 15, 2020, for complaints of chest pain.  *Id*. at 50–51.  His blood pressure measured 129/81.  *Id.*  A follow up was recommended if there was no improvement.  *Id*.  Then, on September 21, 2020, Davis was again examined for complaints of chest pain.  *Id*. at 16.  His blood pressure measured 131/82, and he was advised to follow up if the chest pain recurred.  *Id*.

Davis's blood pressure continued to be monitored.  *Id*. at 16.  On October 8, 2020, Davis experienced an elevated blood pressure and pulse. Examination showed he was sneezing and congested, with blood pressure measuring 122/68. *Id*. at 43.  He reported feeling anxious and was placed on suicide checks.  *Id*.

Davis reported feeling lightheaded on November 13, 2020.  His blood pressure was 122/68.

---

[6]  Davis reported a history of hospitalization for mental health conditions.  ECF 11-2 at 7. Lithium is used to treat and prevent episodes of mania (frenzied, abnormally excited mood) in people with bipolar disorder (manic-depressive disorder; a disease that causes episodes of depression, episodes of mania, and other abnormal moods). Lithium is in a class of medications called antimanic agents. *See* https://medlineplus.gov/druginfo/meds (visited April 2, 2021).

*Id.*  He was instructed to increase his fluid intake, to rise slowly when getting out of bed, and to call if he had additional medical concerns.  *Id.*

On November 25, 2020, Davis's blood pressure was 160/90.  *Id.* at 43.  Davis was reported to have been reacting to the loss of his grandmother and had a flushed face, reactive pupils, a trembling body, and reported not eating much.  *Id.*  He was given liquids, Tylenol for his headache, and mental health was notified.  *Id.*

Davis was seen on November 27, 2020, for a complaint of chest pain.  *Id.* at 48–49.  His blood pressure was 137/89.  *Id.*  The medical provider noted that Davis was experiencing stress related anxiety in response to his grandmother's passing.  *Id.*

On December 21, 2020, Davis was again seen for a report of chest pain.  His blood pressure measured 131/82.  Upon examination, his heart and lungs sounded clear, without adverse sounds. *Id.* at 16.

Davis's blood pressure was taken on December 22, 2020; December 23, 2020; December 24, 2020; twice on December 27, 2020; and December 28, 2020.  It measured, respectively: 128/84; 140/89; 108/70; 120/72; 118/74; and 118/74.  *Id.* at 20.

On December 29, 2020, plaintiff's blood pressure readings were reviewed by Tyronnia Jones, NP.  She determined that they were stable.  *Id.* at 16, 43.

## II.      Standards of Review

### A.

Defendants move to dismiss or, in the alternative, for summary judgment on all claims.  I will consider the claim against Prime Medical in the context of a motion to dismiss.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see In re Birmingham*, 846

F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.,* 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young,* 569 U.S. 221 (2013); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." *See Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir. 1997).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2).  *See Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  The rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in Twombly expounded the pleading standard for 'all civil actions'...."); *see also Fauconier v. Clarke*, 996 F.3d 265, 276 (4th Cir. 2020); *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the

8

legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.,* 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if...[the] actual proof of those facts is improbable and...recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co*., 637 F.3d at 440 (citations omitted); see *Semenova v. Md. Transit Admin*., 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc*., 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), cert. denied, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty*., 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655

F.3d 342, 346 (4th. Cir. 2011), cert. denied, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion.  *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan*, 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies...if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint*.' " *Goodma*n, 494 F.3d at 464 (quoting *Forst*, 4 F.3d at 250) (emphasis in *Goodman*) (citation omitted).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd*., 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co*., 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein...." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways, Inc.,* 510 F.3d 442, 450 (4th Cir. 2007).

## B.

As indicated, defendants' motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56.  A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil

Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. Nov. 29, 2016) (per curiam).

A court may not convert a motion to dismiss to one for summary judgment sua sponte, unless it gives notice to the parties that it will do so.  *See Laughlin v. Metro Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."); *see also Adams Housing, LLC*, 672 F. App'x at 622 ("The court must give notice to ensure that the party is aware that it must 'come forward with all of [its] evidence.'") (citation omitted).  However, when the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur;

11

the court "does not have an obligation to notify parties of the obvious." *Laughlin,* 149 F.3d at 261.

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). But, this discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149.  In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary.  *Id*. at 165-67.

Summary judgment is generally inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc*., 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 F. App'x 632, 638-39 (4th Cir. July 14, 2016) (per curiam); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015).   However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co*., 80 F.3d 954, 961 (4th Cir. 1996)).  To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery.  Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

"[T]o justify a denial of summary judgment on the grounds that additional discovery is

necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC,* 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted), *rev'd on other grounds sub nom. Gardner v. Ally Fin., Inc.*, 514 Fed. App'x 378 (4th Cir. 2013) (per curiam).  A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports*, 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.*, 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted).  But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature.  And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit.  *Harrods*, 302 F.3d at 244 (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Moreover, "[t]his is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Plaintiff has not filed an affidavit under Rule 56(d). Moreover, as to the claims against the individual medical providers, I am satisfied that it is appropriate to address defendants' Motion as one for summary judgment because this will facilitate resolution of this case.

## C.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248.

There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *see CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658 (4th Cir. 2020); *Variety Stores, Inc. v. Wal-mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir.

2018); *Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817

F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

But, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail

as a matter of law." *Anderson*, 477 U.S. at 252.

"A party opposing a properly supported motion for summary judgment 'may not rest upon

the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing

that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d

514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541

U.S. 1042 (2004).  The court must "view the evidence in the light most favorable to . . . the

nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the

witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th

Cir. 2002); *see Hannah P. v. Coats*, 916 F.3d 327, 336 (4th Cir. 2019); *Roland v. United States

Citizenship & Immigration Servs*., 850 F.3d 625, 628 (4th Cir. 2017); *Lee v. Town of Seaboard*,

863 F.3d 323, 327 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

Notably, the district court's "function" is not "to weigh the evidence and determine the

truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S.

at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).  Thus,

the trial court may not make credibility determinations on summary judgment. *Wilson v. Prince

George's County*, 893 F.3d 213, 218-19 (4th Cir. 2018); *Jacobs v. N.C. Administrative Office of

the Courts,* 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French,* 499 F.3d

345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir.

2006); *Dennis*, 290 F.3d at 644-45.  Therefore, in the face of conflicting evidence, such as

competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

That said, "a party's 'self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment.'" *CTB, Inc.*, 954 F.3d at 658-59 (citation omitted). In other words, "[u]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *accord Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012).

In sum, to defeat summary judgment, conflicting evidence, if any, must give rise to a genuine dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Judd*, 718 F.3d at 313. On the other hand, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Because Davis is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see* Fed. R. Civ. P. 8(f) ("All pleadings shall be so construed as to do substantial justice"); *see also Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *accord Bala v. Cmm'w of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

### III.   Discussion

At the time of the three periods of detention giving rise to this case, Davis was a detainee at the WCDC.  It is not clear whether he was a pretrial detainee all three times or was, instead, convicted and serving a short sentence all three times, or a mix.  But, in the context of this case, the outcome is the same.

If plaintiff were solely a pretrial detainee, his claims would be analyzed under the Due Process Clause of the Fourteenth Amendment to the Constitution.  *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001); *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992).  Of import here, pretrial detainees "possess at least the same rights as convicted prisoners."  *Williamson v. Stirling*, 912 F.3d 154, 177 (4th Cir. 2018); *see Bell v. Wolfish*, 441 U.S. 520, 545 (1979).  If Davis was serving a sentence after a conviction, his claims would be analyzed under the Eighth Amendment.

The Fourth Circuit has determined that the Eighth Amendment's deliberate indifference standard, applicable to convicted prisoners, also applies to claims of inadequate medical treatment made by pretrial detainees under the Fourteenth Amendment.  *Hill*, 979 F.2d at 991-92 ("[P]rison officials violate detainee's rights to due process when they are deliberately indifferent to serious medical needs.") (citations omitted); *see Young*, 238 F.3d at 575 ("[D]eliberate indifference to the serious medical needs of a pretrial detainee violates the due process clause."); *Gordon v. Kidd*, 971 F.2d 1087, 1094 (4th Cir. 1992) ("Pretrial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainees' rights to due process when they are deliberately indifferent to serious medical needs."); *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) ("The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any

serious medical needs of the detainee.") (citation omitted).[7]

The Eighth Amendment to the Constitution proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia,* 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein,* 825 F.3d 206, 218 (4th Cir. 2016).  But, the Eighth Amendment "proscribes more than physically barbarous punishments."  *Estelle*, 429 U.S. at 103.  It also "embodies" the "'concepts of dignity, civilized standards, humanity, and decency . . . .'" *Id.* (citation omitted).  It "protects inmates from inhumane treatment and conditions while imprisoned."  *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

Moreover, the protection conferred by the Eighth Amendment imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley v. Albers*, 475 U.S. 312, 319-20 (1986); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994);

---

[7]  In *Hill*, the Fourth Circuit adopted the deliberate indifference standard for a pretrial detainee but recognized that the constitutional protections for pretrial detainees could arguably be "greater" than those afforded to convicted prisoners. *Hill*, 979 F.2d at 991. Since *Hill,* the Supreme Court has called into question the equivalence between the standards applied to claims by pretrial detainees and those applied to claims by convicted inmates. In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Court said that, unlike the standard applied to post-conviction excessive force claims under the Eighth Amendment, the standard for pretrial detainees' excessive force claims under the Fourteenth Amendment does not include a subjective component. *Id*. at 296-97.

Several circuits have extended this reasoning to hold that the standard for claims of pretrial detainees alleging inadequate medical care under the Fourteenth Amendment should not include a subjective component. *See Miranda v. Cty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018); *Gordon v. Cty. of Orange*, 888 F.3d 1118,1124-25 (9th Cir. 2018). But, courts in this circuit, including courts in this district, have declined to extend the holding of *Kingsley* to claims of deliberate indifference to a serious medical need, noting that "neither this Court nor the Fourth Circuit has applied *Kingsley* to a pretrial detainee's claim of failure to protect or deliberate indifference to a serious medical need, where there are no allegations of force applied by the defendants." *See Perry v. Barnes*, No.  PWG-16-705, 2019 WL 1040545, at *3 n.3 (D. Md. Mar. 5, 2019); *accord Mays v. Sprinkle*, No. 7:18CV00102, 2019 WL 3848948, at *1 (W.D. Va. Aug. 15, 2019); *Wallace v. Moyer*, CCB-17-3718; 2020 WL 1506343 at 6*n. 9.

*Raynor v. Pugh*, 817 F.3d 123, 127 (4th Cir. 2016); *cf. DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 989 U.S. 189, 199-200 (1989) (stating that "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being"); *John Doe 4 v. Shenandoah Valley Juvenile Center Comm'n*, 985 F.3d 327, 338 (4th Cir. 2021) (same).

Thus, the deliberate indifference standard applies to cases alleging failure to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, and failure to render medical assistance. *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). But, the Fourth Circuit has observed that "not all Eighth Amendment violations are the same: some constitute 'deliberate indifference,' while others constitute 'excessive force.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Whitley*, 475 U.S. at 319-20).

"Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson*, 501 U.S. at 297). "It is beyond debate that a 'prison official's deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment.'" *Gordon v. Schilling*, 937 F.3d 348, 356 (4th Cir. 2019) (citation omitted).

The deliberate indifference standard is analyzed under a two-pronged test: "(1) the prisoner must be exposed to 'a substantial risk of serious harm,' and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety." *Thompson*, 878 F.3d at 97-98 (quoting *Farmer*, 511 U.S. at 834, 837-38); *see Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209 (4th Cir. 2017).

Of relevance here, in order to state a constitutional claim for denial of adequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106; *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Iko v. Shreve*, 535 F. 3d 225, 241 (4th Cir. 2008). The Fourth Circuit has characterized the applicable standard as an "exacting" one. *Lightsey*, 775 F.3d at 178.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Farmer*, 511 U.S. at 837; *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Schilling*, 937 F.3d at 357; *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018); *King*, 825 F.3d at 219.

A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko*, 535 F.3d at 241 (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)). Proof of an objectively serious medical condition, however, does not end the inquiry. As the Court explained in *Heyer*, 849 F.3d at 209-10, "The plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry."

In the context of a claim concerning the adequacy of medical care, the subjective component of the standard requires a determination as to whether the defendant acted with reckless disregard in the face of a serious medical condition, *i.e.*, with "a sufficiently culpable state of mind." *Wilson*, 501 U.S. at 298; *see Farmer*, 511 U.S. at 839-40; *Scinto*, 841 F.3d at 225. Reckless

disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Similarly, the Fourth Circuit has said: "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997); *see Young*, 238 F.3d at 575-76 ("Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care.").

As the *King* Court reiterated, 825 F. 3d at 219: "The requisite state of mind is thus 'one of deliberate indifference to inmate health or safety.'" (Citation omitted). Put another way, "it is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Lightsey*, 775 F.3d at 178 (emphasis in *Lightsey*); *see Farmer*, 511 U.S. at 839-40; *Anderson v. Kingsley*, 877 F.3d 539, 544 (4th Cir. 2017).

"Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally *denying* or *delaying* medical care, or intentionally *interfering* with prescribed medical care." *Formica v. Aylor*, 739 F. App'x 745, 754 (4th Cir. 2018) (emphasis in *Formica*).

A plaintiff can meet the subjective knowledge requirement through direct evidence of a prison official's actual knowledge. Or, the plaintiff can rely on circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015) (quoting *Farmer*, 511 U.S. at 842); *see also Gordon,* 937 F.3d at 357; *Scinto*, 841 F.3d at 225. In other words, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk." *Brice*, 58 F.3d at 105.

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial *risk* of serious harm.'" *Heyer*, 849 F.3d at 210 (quoting *Farmer*, 511 U.S. at 837) (emphasis added in *Heyer*); *see Thompson*, 878 F.3d at 97-98. But, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry,* 772 F.3d 340, 346 n.8 (4th Cir. 2014); *see De'Lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013).

The Supreme Court has recognized that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *accord Brown,* 240 F.3d at 390-91. The Constitution requires prison officials to ensure "reasonable safety," a standard that acknowledges prison officials' "unenviable task of keeping [sometimes] dangerous [people] in safe custody under humane conditions[.]" *Farmer,* 511 U.S. at 845 (citations and quotation marks omitted). Accordingly, "prison officials who act reasonably cannot be found liable" under the deliberate indifference standard. *Id.*; *see also Short v. Smoot*, 436 F.3d 422, 428 (4th Cir. 2006) (finding that an officer who responds reasonably to a danger facing an inmate is not liable under

the deliberate indifference standard, even when further precautions could have been taken but were not); *Brown*, 240 F.3d at 390-91.  Reasonableness must be judged in light of the risk the defendant actually knew at the time.  *See Brown*, 240 F.3d at 390 (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Of relevance here, deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness" and, "as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Lightsey*, 775 F.3d at 178; *see also Scinto*, 841 F.3d at 225.  Indeed, mere negligence or malpractice does not rise to the level of a constitutional violation.  *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). In *Estelle*, 429 U.S. at 106, the Supreme Court said: "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."

What the Court said in *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999), *cert. denied*, 529 U.S. 1067 (2000), is pertinent: "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . ." *See Young*, 238 F.3d at 576 (stating that a Fourteenth Amendment deliberate indifference claim requires more than a showing of "mere negligence"); *Johnson v. Quinones,* 145 F.3d 164, 166 (4th Cir. 1998) ("[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference.").

Thus, deliberate indifference to a serious medical need "describes a state of mind more

blameworthy than negligence." *Farmer*, 511 U.S. at 835. Although the deliberate indifference standard "'entails more than mere negligence . . . it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *King*, 825 F.3d at 219 (quoting *Farmer*, 511 U.S. at 835). On the other hand, an inmate's mere disagreement with medical providers as to the proper course of treatment does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis,* PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012); *Lopez v. Green*, PJM-09-1942, 2012 WL 1999868, at * 2 (D. Md. June 3, 2012); *Robinson v. W. Md. Health Sys. Corp*., DKC-10-3223, 2011 WL 2713462, at *4 (D. Md. July 8, 2011). And, the right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

In *Scinto*, 841 F.3d at 226, the Fourth Circuit said:

> A plaintiff also makes out a prima facie case of deliberate indifference when he demonstrates "that a substantial risk of [serious harm] was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official . . . had been exposed to information concerning the risk and thus must have known about it . . . ." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (first alteration in original) (internal quotation marks omitted) (quoting *Farmer*, 511 U.S. at 842 114 S.Ct 1970). Similarly, a prison official's "[f]ailure to respond to an inmate's known medical needs raises an inference [of] deliberate indifference to those needs." *Miltier v. Beorn*, 896 F.2d 848, 853 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

Davis brings this action against Prime Medical in its role as the private corporate medical

provider at WCDC and the employer of the individual defendant medical providers.  ECF 1; ECF 4 (asserting "PrimeCare is involved because 'they' are contracted through the Washington County Detention Center"); ECF 7 at 2.  A corporate entity is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior.  *See Austin v. Paramount Parks, Inc*., 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co*., 678 F.2d 504, 506 (4th Cir. 1982).[8]  Moreover, Davis's vague, nonspecific allegations against Prime Medical do not suggest a basis for supervisory liability.  *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (stating supervisory liability requires that a defendant: (1) had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive risk of a constitutional injury; (2) the response to that knowledge was so inadequate as to show deliberate inference to or tacit authorization of the allege offensive practices; and (3) there was an affirmative causal link between defendant's inaction and the alleged constitutional injury).

Accordingly, I shall dismiss Davis's claims against Prime Medical.

As to the remaining defendants, Kimberly Yeager, LPN Sarah Duboraw, LPN, and Misty Butler, LPN, and Megan Ryan-Riffle, Davis asserts that they denied his medication "all three times. And tried saying I don't have high blood pressure."[9] ECF 4.  He adds:  "I went to medical several times and they said they aren't placing me back on medication because my blood pressure was not high enough."  ECF 7 at 2.   Yet, Davis asserts no specific facts against these defendants individually.  And, his claims are belied by the uncontroverted medical records.

---

[8]  Respondeat superior is a legal doctrine that provides an employer is liable in certain instances for the wrongful acts of an employee.  *See Black's Law Dictionary* (8th ed. 2004).

[9]  Davis asserted that he was going to provide his medical records from his primary care provider to the court.  It does not appear he provided these records to medical providers at WCDC while detained there, nor has he filed them in this matter.  ECF 4.

Davis's medical records that show that Yeager took Davis's blood pressure and vital signs in 2019 on June 17, June 27, and July 7. ECF 11-2 at 22. In 2020, Yeager took plaintiff's temperature on March 8, March 10, and March 11, and his blood pressure on May 5, July 22, August 9, and October 8. *Id.* at 20-21. Yeager also performed Davis's intake screening on July 22, 2020. *Id.* at 3-10.

Duboraw took Davis's blood pressure and vital signs on June 14, 2019; July 30, 2019; August 23, 2019; and August 27, 2019. ECF 11-2 at 21, 22. On September 3, 2019, she assessed his psychotropic medication and recommended he follow up with his provider on discharge. *Id.* at 39-49. And, she took his blood pressure on April 29, 2020 and April 30, 2020. *Id.* at 20, 57.

Butler took plaintiff's vital signs on June 15, 2019, August 6, 2019, December 28, 2019, January 26, 2020, and December 21, 2020. ECF 11-2 at 20-22. Butler also reviewed Davis's psychotropic medication with him. *Id.* at 41.

Ryan-Riffle took Davis's blood pressure on May 2, 2020. *Id.* at 20.

The medical records provide no support for Davis's claim that these defendants acted with deliberate indifference to his serious medical needs by denying him Metropolol. Notably, Davis does not dispute that, until his medical visit at WCDC on April 29, 2020, he did not mention that he had been prescribed Metoprolol by an outside physician for hypertension. *Id.* at 16-17.

In evaluating Davis's medical records and numerous visits with medical staff, there is no evidence that defendants' conduct was reckless or so inadequate as to support a claim of deliberate indifference. To the contrary, defendants and other medical providers closely monitored Davis's sporadic hypertension from his initial arrival at WCDC throughout his periods of detention at WCDC. *Id.* at 16-17; 20-22. And, when Davis complained of chest pain, he was seen by medical providers, his vital signs were evaluated, he was provided care, and he was instructed to return if

his symptoms recurred.

Disagreements between medical staff and an inmate as to the necessity for, or the manner or extent of, medical treatment do not amount to a constitutional injury.  *See Estelle,* 429 U.S. 105–06 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.).   Davis's mere disagreement with the course of treatment provided by medical providers will not support a valid constitutional claim.  *See Russell,* 528 F.2d at 319.  In the absence of any genuine issue of material fact as to the evidence presented, summary judgment will be granted in favor of defendants Yeager, Duboraw, Butler, and Ryan-Riffle.

To the extent Davis may intend to raise a medical malpractice claim based on diversity jurisdiction of the parties,[10] 28 U.S.C. § 1332, or supplemental jurisdiction under 28 U.S.C. § 1367(a), defendants contend that the malpractice claim is subject to dismissal because Davis failed to comply with the Maryland's Health Care Malpractice Claims Act ("HCMCA" or "Act"), Maryland Code (2013 Repl. Vol., 2019 Supp.), Courts & Judicial Proceedings Article ("C.J."), § 3–2A–01 *et seq.*  The Act establishes procedures for all "claims, suits, and actions ... by a person against a health care provider for medical injury allegedly suffered by the person in which damages ... are sought." C.J. § 3–2A–02(a)(1).  The HCMCA is intended "to weed out" non-meritorious medical malpractice claims and reduce the costs of litigation. *Wilcox v. Orellano*, 443 Md. 177, 184, 115 A.3d 621, 625 (2015); *see Walzer v. Osborne*, 395 Md. 563, 582, 911 A.2d 427 (2006); *see also Barber v. Catholic Health Initiatives, Inc.*, 180 Md. App. 409, 951 A.2d 857 (2008).

The HCMCA provides the process that a claimant must follow as a prerequisite to filing a

---

[10]  The address provided by Davis for Prime Medical is in Pennsylvania.  ECF 1 at 1.

suit in court seeking damages.  *See* C.J. §§ 3-2A-04(b)(1), (3).  Before filing suit, the claimant must first file a claim with the Health Care Alternative Dispute Resolution Office ("HCADRO"), an administrative body established by the Act.  *See* C.J. § 3–2A–04(a)(1)(i); *see also Alvarez v. Md. Dept. Of Corr.*, PX-17-141, 2018 WL 1211533, at *8 (D. Md. Mar. 8, 2018) (stating that a medical malpractice claim must first be submitted to the HCADRO as a condition precedent to filing a medical malpractice suit).

Within 90 days of filing that claim, the claimant must submit a certificate of a qualified expert, along with a report of the attesting expert, setting forth the health care provider's alleged departure from the standard of care and proximate cause. If a claimant fails timely to file an expert certificate and report, the suit is subject to dismissal, without prejudice. C.J. § 3–2A–04(b)(1)(i); *see Wilcox*, 443 Md. at 185, 115 A.3d at 625; *Walzer*, 395 Md. at 578–79, 911 A.2d 427.

Davis neither asserts nor provides any documentation to show his compliance with the HCMCA.  Accordingly, to the extent he raises a medical malpractice claim under Maryland law, it will be dismissed, without prejudice.

## IV.     Conclusion

For the foregoing reasons, I will grant defendants' Motion.  In particular, I shall dismiss the deliberate indifference claim against Prime Medical.  And, I shall grant summary judgment in favor of Yeager, Duboraw, Butler, and Ryan-Riffle in regard to the deliberate indifference claims against them.  To the extent Davis seeks to raise a claim for medical malpractice, his claim will be dismissed, without prejudice.

A separate Order follows.

April 9, 2021                          _____/s_____
Date                                   Ellen L. Hollander
                                       United States District Judge

28